Standing and Ex parte Young together ensure that the proper parties are before the court. In a pre-enforcement challenge to a rule like GA-37, a plaintiff may only sue the state official who bears the particular duty to enforce the rule. And here, GA-37 will be enforced by the Texas Department of Public Safety, whose director is already an appropriate defendant in this case. But Governor Abbott, who issued the rule, has no involvement with enforcing it. He therefore should have been dismissed as a defendant. There's just a few additional points that I'd like to address. First, courts do not enjoin the operation of laws or orders in the abstract. They enjoin the party who is responsible for enforcing the challenged provision. In this case, GA-37, on its face, directs DPS to stop, reroute, and potentially impound a vehicle that's in violation of the substantive provisions of the order. Those are the challenged enforcement actions in this case, and they will not be carried out by the governor or his office. This court and the Texas Supreme Court have now repeatedly recognized that the governor plays no role in enforcing executive orders like GA-37 that have been issued in response to the pandemic. The other side points to the governor's emergency commander-in-chief power under section 418.015c of the Texas Government Code, but that provision does not make this case any different. First of all, the governor did not invoke that power in issuing GA-37. The order does not mention the commander-in-chief authority, and it doesn't cite section 418.015c. To the extent that the governor had commander-in-chief power available to him, he delegated it to DPS consistent with the text of that statute, section 418.015c, which says that the governor shall delegate or assign command authority to the extent possible, and as Director McCraw testified, the director of DPS, he is in charge of DPS. DPS is responsible for drafting enforcement procedures for carrying out the enforcement of GA-37 and then actually enforcing it, and enforcement will not begin until Director McCraw approves those procedures, and again, he is a defendant in this case. So you would deny that 411.012 gives the governor the authority to enforce GA-37? Well, it says that he may become commander-in-chief, but he needs to do so, and he's not doing so through GA-37. The statute, the government code provision allows the governor to command DPS, right? May command DPS, yes. But then if you look at 418.015c, it says, to the greatest extent possible, the governor shall delegate or assign command authority. Why is directing DPS to act in an executive order insufficient to invoking the statute? Well, I don't think that's any different than when the legislature directs a state agency or an official to carry out a law. You look to who's actually directed to do the work of enforcement. That is who the appropriate defendant is, and in this case, that's the director of DPS. And the governor's power to control movement through a declared disaster area under 418.018c also does not make him an appropriate defendant. GA-37 does invoke that provision in that the change the fact that the governor is not the official who will be carrying out enforcement of that order. Again, he's not... What if DPS tells the governor, go pound sand. We don't care what you said in your executive order. Can you do anything about that? That's counterfactual to the record, but if, suppose that happened, presumably the governor could issue a separate order either taking command authority over the enforcement of the order at issue or perhaps directing a different state agency, but it doesn't change the fact that... He could take command. He could fire everybody who doesn't do what he says, right? Well, I don't know that he could fire... He takes command. I mean, the government code says he can command DPS. Well, but he'd have to do so, and that hasn't happened here, and there's... Right, but I'm just trying to tease out your not sufficient to sort of resemble enforcement, but if DPS says, I don't care what you said in GA-37, we're not going to do what you say, what could he do about that? Well, again, he's directed to delegate this type of authority to the greatest extent possible, and if it becomes impossible for his order to be carried out, presumably he could issue a separate order taking command authority, but he'd have to do that, and he hasn't, and there would be no need to, of course, in this case because DPS acknowledges and expects to be enforcing this once the case proceeds. There is a disaster he's already declared, correct? There's two, actually, that underlie this order, that's right. So the prerequisite for 411.012 is already met? Yes, but he'd have to issue another order explicitly invoking commander-in-chief authority so that his office... I mean, I don't even know that they have the resources to do something like that, but they would... They have authority, correct, but they haven't exercised it here. Mr. Green, I just want to make sure I understand this one proposition. I don't... Is there... Could the governor fire anybody at DPS for not obeying GA-37? DPS is directly overseen by the Public Safety Board. I believe they have the direct authority over DPS, so I don't... The way I read the government code is that the board members serve terms of years and that the executive director serves the board, not the governor. Correct. I'm not sure... I don't know how he would fire anybody. He couldn't, to the extent that I agree with it. That's my reading of the statutes as well. I'm trying to get to the meaning of command. Command is a pretty forceful word, but is it little c command, all caps command? What kind of command are we talking about? If you look to the Sterling v. Constantine's case out of the Supreme Court that the other side cites, there's an order in that case in which the governor explicitly invokes commander-in-chief authority in the order that's at issue and says that he will basically carry out the operation that was at issue in that case, that everything was subject to his control. There's nothing like that in GA-37. We're just seeing delegate... basically DPS is responsible for now enforcing this order. Finally, I'd say remand for discovery would be inappropriate in this case. It doesn't make sense when the governor is asserting sovereign immunity, which entails an immunity from suit and that benefit is almost entirely lost if any sort of discovery proceeds. At bottom, the appeal presents only legal questions that are governed by this court's precedent, and under those authorities, the court can simply read the executive order and see who's charged with enforcing it, and here GA-37 delegates the enforcement authority on its face to DPS, and that's in keeping with section 418.015c, which instructs the governor to do just that. If plaintiffs ultimately prevail on the merits, they can obtain all the relief they need through an injunction that operates against Director McCraw. So unless there aren't any further questions, the court should reverse the trial court's order and remand with instructions to dismiss Governor Abbott from the case. I do have one final one. Even if Governor Abbott took affirmative action to enforce the order, would the supremacy clause prevent the order from having any effect? Well, that's... you're asking about the merits of the case ultimately? I mean, I think that or if I'm missing it. Well, the question is what it was. I mean, even if the governor took affirmative steps to enforce the executive order, like enforcement steps, what would the supremacy clause have to say about it? You're right, this may be an over-the-horizon merits issue. I'm not sure I'm prepared to answer that today, but I mean... You don't want to forecast or preview anything? I mean, that's the next question, you know, that has to go back below, you know, whether whoever is the defendant in this case, but it shouldn't be Governor Abbott. Fair enough. All right, so the DPS people are still in the case, right? Yes, the Director is a defendant in this case. Fixing out, okay. All right, thank you, sir. You've reserved your rebuttal rights if you need them. All right, Ms. Huddleston. Good morning, Your Honors, and may it please the Court, Katherine Huddleston for Appalachians. This litigation is different from all other recent executive order cases, and the reason for that is the unique confluence of specific statutory authority over DPS, and the fact that this executive order specifically tasks DPS with enforcement. So all of us agree, Your Honors, that this executive order is issued pursuant to the Governor's emergency powers. It's an emergency executive order. All of us agree that the executive order specifically tasks DPS with enforcement, and we all agree that the two statutes at issue, 418.015 and 411.012, both provide the Governor with commander-in-chief authority over DPS. The only question is defendants contend that Governor Abbott has not exercised commander-in-chief authority, that he has, in fact, delegated it on the face of the order, but we think both that he has not delegated it on the face of the order and that they go into factual questions that are best before the district court in the first instance and not before this court. So to take things apart a little bit more, in the executive order, the executive order specifically directs DPS to take specific action. The executive order in doing this does not delegate command authority to the director of DPS. Command authority, as you can see from 418.015, is authority vested in an individual, so for example, commander-in-chief. The government, for its part, regularly sues the president as well as the director or the secretaries of various agencies. So for example, if you think about the COVID-19 vaccine mandate case that is now on appeal before this court, Governor Abbott sued President Biden as well as the Secretary of Defense. In the Biden versus Texas litigation, the Romanian-Mexico litigation, President Biden was sued as well as Secretary Mayorkas, and this is a relevant thing to do. It's a totally normal thing to do, and the reason for that is ensuring that everyone in the chain of command is enjoined so that individuals will not be potentially subject to conflicting orders. Now to go back to the text of the executive order issue here, GA-37, in directing DPS to take an authority, or whether Governor Abbott continues to have command authority pursuant to that statutory authority, and something more would be required. The governor would need to take some sort of express step to delegate command authority. Now counsel, on the other side... Has the governor taken any action to enforce the order beyond issuing the order itself? So two responses to that, Judge Willett. First, I think that that's not the proper sphere of inquiry because DPS has certainly taken steps, and Governor Abbott is the commander-in-chief of DPS. We don't have a lot of visibility into exactly how DPS carries things out. Rather, we know that the governor is the commander-in-chief of DPS. We know that Director McCraw is the director of DPS, but we or any other plaintiffs won't necessarily see inside the curtain to see exactly how things are unfolding within the agency. And so it makes sense to sue whoever is in charge of the agency. You could think about it another way. For example, it's not clear that the Secretary of State himself is always carrying out election activities rather than people within the office of the Secretary of State, but it's regular and normal to sue the Secretary of State. And then under FRCP 65, his officers and agents are enjoined. And so the same is true and makes sense here. Now on the facts of this litigation, counsel on the other side cited a declaration from Director McCraw. It's in the record on appeal at about 279 to 280. Now that declaration predates our involvement in this litigation. This is consolidated litigation. We started out as case 178. The United States started out as case 173. That declaration was in the government's side of the case, and it was before we even became involved in the litigation. Governor Abbott had not been sued, so the question of whether the office of the governor was specifically involved was not at issue there. That fact had not been questioned. That is best addressed on remand to the district court in the first place. DPS is still in the case, correct? The Director of DPS... Director McCraw is still in the case. Director McCraw in his official capacity, yes. So if you win an injunction against Director McCraw, what would an injunction against the governor achieve additionally? Wouldn't you get every bit of relief you're seeking with an injunction against Director McCraw? So I think your point, Your Honor, earlier about the potential for the governor to fire individuals within the Department of Public Safety is a good one. But the governor more broadly retains control as commander-in-chief over the Department of Public Safety. It also has the effect potentially of creating conflicting obligations on the Department of Public Safety officials and agents within that. So you can imagine if Governor Abbott, not bound by the take one action, directs them under 411.012 to take a specific action, and then Director McCraw and his agents are enjoined from taking that action, it creates a conflict for them. And that's really something that the federal rules of civil procedure are very careful about. If you think about Rule 19 and required joinder, Rule 19 says if there's a common interest and someone would be subject to conflicting obligations required to join into the case, Rule 65 says officers and agents are encompassed within the injunction. And I think all of that points to making sure you have the person highest up the chain of command involved in the lawsuit in order to ensure that everything is functioning appropriately. I'm not sure I understood your answer to Judge Willett. I guess yesterday I slowed an attorney down. I probably should have slowed you down a little bit. I apologize, Your Honor. Judge Willett asked you if you got an injunction against the Director, would that give you all the relief that you would otherwise need unless and until the Governor intervened? I mean, what's your, maybe you said it and I just missed it. I apologize. The answer is no, Your Honor, and that's because the Governor could act as Director. Until he acts, though, do you have all the relief you need until he does something? You know, I think that's always true, Your Honor, in all cases involving sort of multiple people in an injunctive relief lawsuit that there could be one person who doesn't yet act and then once they act, then they have acted and your plaintiffs have been harmed. But I think the idea is to prevent that harm at the outset. You could imagine the Office of the Governor replacing the Director pursuant to Commander-in-Chief Powers. You know, I would hope that the Office of the Governor would not do all of those things with an injunction issue, but the purpose of the injunction is to ensure that plaintiffs are protected from any such enforcement actions. Suppose that a DPS trooper inducts a traffic stop and it goes awry and there's going to be litigation about it. Maybe it's excessive force or it's a Fourth Amendment search or seizure problem. Can the plaintiff name the Governor in the lawsuit? He's the Commander-in-Chief of DPS, after all. So I think the difference there, Your Honors, it sounds like you're describing an act that has already been completed where someone is seeking damages. If it were, for example, a pattern and practice of unlawful action, then one could sue the Governor or Director McCraw. If it were an individual sort of rogue agent, I think that presents a different set of facts. Why would you not be able to sue the Governor for just a traffic stop? I mean, he's ultimately in charge under your theory, right? He's the one that the buck stops with him. So in ordinary circumstances, you cannot sue the Governor because in ordinary circumstances, he's not performing the Commander-in-Chief function. This is emergency circumstances. Okay, so now let's do the traffic stop and it's during Hurricane Harvey. But it's just a traffic stop. It's in the city of Houston. You talk a lot about Harvey in your brief. It's in the city of Houston and somebody was speeding. Well, I'm going to sue the Governor for that too. Why can't we do that? Your Honor, so I think if it were damages litigation, in those circumstances, right, you will sue the individual officer. And that sort of presents a different set of questions in this facial injunctive relief that we're seeking here. If you were seeking injunctive relief, if it were against an individual officer, if you were seeking to enjoin the DPS officer from performing such stops in future, then I think it would be appropriate to sue the DPS officer. And if it's a sort of, at least if it's a pattern of practice situation to sue Director McCraw. And then I think suing the Governor is appropriate in that emergency context because of the Governor's Commander-in- an ordinary, you know, again, Governor Abbott has just sued President Biden over the vaccine mandate, as well as the Secretary of Defense and the Department of Defense. It's not unusual to sue sort of everyone involved in that effort in order to ensure that you are getting complete relief and that all of those parties are on notice. So would you agree that whatever the Governor's power over Director McCraw, and I confess I have a really hard time understanding this whole, he's the Commander-in-Chief of DPS, because it's just not what the statute says, but whatever it is, let's just, let's just, whatever his power is over Director McCraw, that his power over the Texas Secretary of State is exponentially higher? You know, I would disagree with that, Your Honor, because I think the distinction here is that Governor Abbott is functioning in the emergency circumstances with emergency responsibility as Commander-in-Chief, able to direct the activities of DPS. And Your Honor brought up the Public Safety Commission as well. 411.012 says that Governor Abbott in an emergency may direct the activities of the Public Safety Commission as well. So this is really a unique set of circumstances in which we have multiple statutes that state specifically that the Governor is Commander-in-Chief over agencies with emergency responsibilities, and over DPS in particular, and states specifically that he may direct the activities of both the Department and the Public Safety Commission. What is the limit of the Governor's power over the Texas Secretary of State? Your Honor, I have not prepared for that question, and I would not be prepared to take a position on that right now. I think the distinction between the Secretary of Safety in these circumstances, in the circumstances of these executive order cases, is that the Secretary of State is understood as exercising his powers pursuant to the election code and not pursuant to emergency powers. As to DPS specifically, is it your position that every time the Governor issues an executive order pertaining to DPS during an emergency that the Governor has exercised command, seized command, is in command of DPS? So I would modify that a little, Your Honor. I would say any time the Governor issues an executive order specifically tasking DPS with enforcement, he is Commander-in-Chief, and I would say also the Governor has the ability... Tasking DPS with enforcement. Tasking DPS with enforcement of the executive order. Not the Governor enforcing, but I guess I would say it's sort of a weird way to think about it, but the Governor is wearing two hats in this moment. One of them is his quasi-legislative hat with respect to the executive order, but then his other hat is as Commander-in-Chief of DPS. And so the Governor issues the executive order in the quasi-legislative capacity directing DPS to take action. Then the office of the Governor may well be involved with DPS and retains the authority over DPS, may well be involved at a direct operational level, and retains authority over DPS. And you can see that from Hurricane Harvey where the Governor said... Office of the Governor said that they were exercising Commander-in-Chief powers. In the Hurricane Harvey disaster declarations, there was no mention of the Governor as Commander-in-Chief over DPS. It was not something that the Governor had to reach out and claim. Now I say all of that. The Governor could disavow responsibility, could delegate command to DPS or to the Director of DPS pursuant to 418.015. And counsel on the other side stated the Sterling case. I think that's a really good example of what the Governor could do. So in the Sterling case, the executive order directed that the Adjutant General assumed command of oil fields in East Texas, a circumstance I would not imagine would be at issue today. Regardless, in it, it said subject to the Governor as Commander-in-Chief. And the distinction there is it specifically tasked a person as Commander and then said, but I do retain my Commander-in-Chief authority. If it had specifically tasked a person with command or if Governor Abbott in this executive order had specifically tasked Director McCraw with carrying out these obligations, an individual, and had said, I delegate command authority to Director McCraw, that's the appropriate way to go about it. And that's because command authority really runs to a person or an individual rather than merely to an agency writ large. And particularly in this context, when the Governor is Commander-in-Chief of DPS, he needs to explicitly delegate that authority. And without doing that, on the face of the order and on the face of the statutes, Governor Abbott remains able to engage at a direct operational level in things like deployment and staffing, as they did in Hurricane Harvey. We know that the Office of the Governor, pursuant to one of these disaster declarations, the Migrant Disaster Declaration, does engage at a direct operational level with DPS. They have testified to the Texas State House about that, for example. And so the Governor would need to take some sort of affirmative step to disclaim or disavow or delegate as the statute directly states that he may do, but to explicitly delegate that authority. And I see my time is running short. I wanted to cover a couple more things. The Governor agrees in his reply brief at page seven that, quote, Director McCraw is a state official accountable to the Governor. The government agrees with that point. But under state law, that is only possible if Governor Abbott remains Commander-in-Chief of DPS. Otherwise, Director McCraw is, quote, directly responsible to, unquote, the Public Safety Commission. He can only be directly accountable to the Governor if the Governor is retaining that command authority, if he is subject to that command authority. Additionally, Your Honors, this factual question about Director McCraw and the implementing guidance, as I already stated, this is something that was in the case prior to our entry into the case. We have never teased out these facts, never teased out the relationship between the office of the Governor, on the one hand, and the Department of Public Safety's jurisdictional discovery prior to any sort of adverse ruling based on those facts. And so remand to the district court to rule on that factual question in the first instance is appropriate. The district court ruled on the face of the statute and the face of the executive order and didn't do that more direct granular inquiry into what was occurring between those agencies. And finally, I think that really points to the practicalities involved here and the wisdom of ensuring that sovereign immunity does not become a subject of discovery or inquiry and instead ensuring that on the face of the statute, the face of the executive order, the face of the publicly available information, plaintiffs know whom to sue and are able to get complete relief through doing so. Again, having DPS agents, DPS officers subject to potentially conflicting authority, potentially conflicting requirements would be a problem going forward. It would be a problem practically speaking. I was trying to wait to get to the end of the sentence, but I don't think you have any periods at the end of your sentence. So I'll just ask you. You may have answered this before. So if the governor is excised from the case, what remains to occur, DPS is still, what's the status of the case below? So this is before you on interlocutory appeal. There's a preliminary injunction in place and the case will move forward. We have a fourth amendment claim that is currently live and the United States has a supremacy clause claim that is live. So there's a hearing or a trial or something. It's on pause because of this interlocutory appeal. That's correct, Your Honor. So if the governor is excised, I'm not saying he is, but if he is, you just pick up where you left off in the district court below. Is that right? That's correct and also if the governor remains in the appeal, we pick up where we left off in the that will occur. That's correct, Your Honor. One question that I hope Judge Stewart will let you answer. Sure, sure. So government code 418-012 says the governor may issue executive orders, proclamations, and regulations and amend or rescind them. So the verbs are issue, amend, rescind and these orders have the force and effect of law. Governor Abbott explicitly invoked that code provision 418-012 when he issued this executive order GA-37. So again, it uses issue, amend, rescind. It doesn't say enforce. What interpretive weight should we give that? And also you mentioned the two hats that the governor wears and one when he issues the executive order may be more kind of legislative hat. Is that what you said? Yes. Promulgating law, but the power to promulgate a law is not the power to enforce the law. So just tackle that. That's correct, Your Honor. And so the power to enforce comes from those commander-in-chief statutes and as well the movement and control statute that we cited. So the governor has direct power in that statute to deal with movement and control in disaster areas, but it really bottoms out at those two commander-in-chief statutes that do give enforcement authority. And that's, Your Honor, important in a disaster context, of course, because things are moving quickly and you need to have a clear chain of command and a clear individual who's in charge. And if this court has no further questions, I see my time has expired. All right. Thank you so much. All right. Back to you, Mr. Green. Any rebuttal, if you'd like. Thank you, Your Honor, and may it please the court. Just a few quick points. An injunction, as everyone was picking up on, would practically give all the relief that the plaintiffs are seeking. That's an injunction operating against the director who remains a defendant in this case. There's no reason and no need to have it additionally enjoin Governor Abbott. And this isn't like all other cases where you name a whole bunch of folks that might be responsible for something. We're talking about state sovereign immunity and the governor's sovereign immunity, which, again, is an immunity from suit, and which is at issue in this case, and which prevails over some common understanding of needing to enjoin everyone that might possibly be involved. He's not involved with enforcing the order at issue, and that is all we need to know. This case isn't different from the precedent that we cited from this court. G37 does not invoke the governor's commander-in-chief authority. It doesn't cite 418.015c or otherwise make any suggestion that the governor is going to be involved with enforcing it. Instead, on the face of it, it directs DPS to do all the enforcement. Their director is already a defendant in this case, and that's all we need to know. So we would just ask that the court reverse with respect to the governor, remand the case with instructions to dismiss him from the lawsuit. All right. Thank you, Mr. Green. Appreciate it. All right. Thank you, counsel, for your briefing and your argument and responses to the panel's questions. The case will be submitted, and we will get decided as quickly as possible.